UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JORGE ROSARIO,

                              Petitioner,

         -against-                                          9:18-CV-0988 (LEK)

JOHN COLVIN,

                              Respondent.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Petitioner Jorge Rosario filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. Dkt. No. 1 ("Petition").[1] He raises the following grounds for federal habeas relief:

trial counsel was ineffective ("Ground One"); the sentence imposed was "vindictive in retaliation

for [Petitioner's] exercise [of] his right to trial" ("Ground Two"); and count three of the

indictment charging him with unlawful imprisonment in the first degree is void for duplicity

based on the trial testimony ("Ground Three"). Pet. at 5–8, 16–25.

Respondent opposes the Petition and filed pertinent records from the state court

proceedings. Dkt. Nos. 15, 15-1, 15-2, 15-3, 17 ("State Court Records" or "SR"); Dkt. Nos. 15-4

& 15-5 at 1–183 ("Trial Transcripts" or "T.");[2] Dkt. No. 15-5 at 184–226 ("Sentencing

Transcript" or "S.");[3] Dkt. No. 16 ("Answer"); Dkt. No. 19 ("Respondent's Memorandum of

_____

[1]   The cited page numbers for the Petition refer to those generated by CM/ECF, the
Court's electronic filing system.

[2]   The cited page numbers for the Trial Transcripts refer to the original page numbers
located at the top right corner of each page.

[3]   The cited page numbers for the Sentencing Transcript refers to the original page
numbers located at the top right corner of each page.

Law in Opposition to the Petition for a Writ of Habeas Corpus" or "R. Mem."). Petitioner has also filed a reply with exhibits. Dkt. No. 27 ("Traverse").

For the reasons that follow, the Court denies and dismisses the Petition.

## II.    BACKGROUND

In September 2013, Petitioner was indicted by a Franklin County Grand Jury on charges of first-degree burglary, first-degree reckless endangerment, first-degree unlawful imprisonment, first-degree criminal contempt, first-degree rape, first-degree criminal sexual act, second-degree criminal contempt, second-degree menacing, criminal obstruction of breathing, and second-degree aggravated harassment. SR at 78–82.[4]

Following pretrial motions and hearings, Petitioner proceeded to trial in March 2014. SR at 85–100. Shortly after jury selection, a mistrial was declared when defense counsel advised the court that one of the People's witnesses was a former client. SR at 96–100. Prior to the second trial, Petitioner rejected a plea offer of four years' incarceration in exchange for a guilty plea to a Class D violent felony. SR at 101–03.

The second trial began on September 8, 2014. Dkt. No. 15-4 at 1. On September 11, 2014, the jury convicted Petitioner of first-degree unlawful imprisonment, second-degree criminal contempt, and criminal obstruction of breathing. Dkt. No. 15-4 at 4; T. at 641–44. The jury acquitted Petitioner on the burglary, first-degree contempt, rape, criminal sexual act, and menacing counts. T. at 640–42. The Appellate Division briefly summarized the facts of this case as follows:

> [Petitioner] and the victim began living together in 2010 and broke up in approximately April 2013. The victim obtained an order of protection against [Petitioner] on July 3, 2013. The victim alleged that, on the night of July 12,

---

[4] The Aggravated Harassment count was dismissed on consent. SR at 110.

2013, [Petitioner] entered her residence and kept her there overnight by brandishing a gun, during which time he assaulted her. As a result, [Petitioner] was arrested. On July 14, 2013, [Petitioner] called her from jail, again violating the order of protection. [Petitioner] was charged in an indictment with (1) burglary in the first degree, reckless endangerment in the first degree, unlawful imprisonment in the first degree, criminal contempt in the first degree, rape in the first degree, criminal sexual act in the first degree and menacing in the second degree as a result of the July 12, 2013 incident, (2) criminal contempt in the second degree as a result of the July 14, 2013 phone call from jail, and (3) criminal obstruction of breathing as a result of a prior incident in April 2013.

People v. Rosario, 157 A.D.3d 988, 989 (3d Dep't 2018).

Before sentencing, the People filed a persistent felony offender ("PFO") information. SR at 369. The trial court then ordered a hearing to determine whether a PFO sentence was warranted. SR at 374–76.

On January 26, 2015, the trial court held a PFO and sentencing hearing, during which Petitioner admitted to three predicate felony convictions. S. at 1–5. On that basis the court found that Petitioner met the statutory criminal record requirements for a PFO finding. S. at 6. At the conclusion of the hearing, the trial court ruled that a PFO sentence was warranted in light of Petitioner's criminal history and character. S. at 31–32. The trial court then sentenced Petitioner to a 15-year-to-life prison sentence for the unlawful imprisonment conviction and concurrent one-year terms for the contempt and obstruction of breathing convictions. S. at 39–40.

Petitioner appealed his conviction to the Appellate Division, Third Department, claiming that: (1) the unlawful imprisonment conviction was based on legally insufficient evidence, SR at 25–31; (2) the unlawful imprisonment count was rendered duplicitous by trial testimony, SR at 31–36; (3) the unlawful imprisonment conviction was against the weight of the evidence, SR at 36–43; (4) the sentence was imposed vindictively in retaliation for Petitioner's decision to go to trial, SR at 43–48; (5) the PFO designation and sentence were unwarranted, SR at 48–50; (6) the

sentence was harsh and excessive, SR at 50–53; and (7) trial counsel was ineffective, SR at 53–56.

On January 4, 2018, the Third Department affirmed Petitioner's conviction. Rosario, 157 A.D.3d at 996. In so doing, the court held, among other things, that Petitioner failed to preserve for appellate review his duplicity and vindictive sentence claims and that trial counsel was not ineffective. Id. at 989–96.

Petitioner sought leave to appeal to the New York Court of Appeals. SR at 508–13. Petitioner raised the vindictive sentence, harsh and excessive sentence, and duplicity claims, notwithstanding the Third Department's findings that these claims were unpreserved. SR at 510–12. Petitioner argued that he was not required to preserve the excessive sentence claim, and that it was ineffective assistance of trial counsel to not preserve the other two claims. Id. Petitioner also claimed that trial counsel was ineffective for not requesting jury charges on lesser-included offenses. SR at 512.

The New York Court of Appeals denied leave to appeal on June 15, 2018. People v. Rosario, 31 N.Y.3d 1121 (2018). This action followed.

## III.   LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a charge adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); Cullen v. Pinholster, 563 U.S. 170, 180–81, 185 (2011); Premo v.

Moore, 562 U.S. 115, 120–21 (2011); Schriro v. Landrigan, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" Nevada v. Jackson, 569 U.S. 505, 508–09 (2013) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)); see also Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting Richter, 562 U.S. at 103)).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" Parker v. Matthews, 567 U.S. 37, 38 (2012) (per curiam) (quoting Renico, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. Wood v. Allen, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" Schriro, 550

U.S. at 473–74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." <u>Lewis v. Conn. Comm'r of Corr.</u>, 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" <u>Johnson v. Williams</u>, 568 U.S. 289, 301 (2013).

## IV. DISCUSSION

For clarity, the Court considers Petitioner's three grounds for relief out of order.

### A. Ground Two

In Ground Two, Petitioner argues that his sentence was vindictively imposed in retaliation for his decision to go to trial. Pet. at 19–21. Petitioner is not entitled to federal habeas relief on this claim.

As an initial matter, federal habeas review of a state court decision is prohibited if the state court rested its judgment on adequate and independent state law grounds. <u>Harris v. Reed</u>, 489 U.S. 255, 261–62 (1989); <u>Cotto v. Herbert</u>, 331 F.3d 217, 239–40 (2d Cir. 2003). "[T]his rule applies whether the state law ground is substantive or procedural." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991). If the state court "explicitly invokes a state procedural bar rule as a separate basis for decision," a federal court is precluded from considering the merits of federal claims in a habeas petition. <u>Harris</u>, 489 U.S. at 264 n.10; <u>see also</u> <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000) (In order for federal review to be barred, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" (quoting <u>Harris</u>, 489 U.S. at 261–62)).

Here, the Third Department applied New York's contemporaneous objection rule, N.Y.

C.P.L. § 470.05(2), to find that Petitioner had failed to preserve the claim that "the sentence imposed was vindictive and constituted a penalty for exercising his right to a trial." Rosario, 157 A.D.3d at 990. New York's contemporaneous objection rule provides that a question of law is properly presented to the appellate courts when "a protest thereto was registered, by the party claiming error, at the time of such ruling . . . or at any subsequent time when the court had an opportunity of effectively changing the same." C.P.L. § 470.05(2). The Second Circuit has held that "the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011), cert. denied, 132 S. Ct. 2439 (2012); see also Romero v. Sheahan, No. 13-CV-4048, 2016 WL 3460372, at *9 (E.D.N.Y. Jun. 21, 2016) (on habeas, declining to reach merits of claim that sentence was "punishment for [petitioner] having exercised his constitutional right to a jury trial" where petitioner failed to preserve the claim in state court).

Since the Third Department relied on the contemporaneous objection rule when it denied Petitioner's claim that his sentence was vindictively imposed in retaliation for his decision to go to trial, and nothing in the record suggests that the invocation of the preservation rule was unwarranted, federal habeas review of the claim is barred by an adequate and independent state court ground. See Hamilton v. Lee, 707 F. App'x 12, 14 (2d Cir. 2017) ("'[T]here is no question that the claimed procedural bar,' the failure to comply with New York's contemporaneous objection rule, 'constitutes an 'independent' state ground of decision.") (quoting Cotto, 331 F.3d at 239); Garcia v. Lewis, 188 F.3d 71, 77, 82 (2d Cir. 1999) ("[T]he Appellate Division['s] rul[ing] that [the petitioner] failed to preserve his public trial claim for appellate review" constituted "an independent and adequate state ground of decision that precludes federal habeas review.").

Petitioner can avoid this procedural bar by showing cause for the default and resulting prejudice, or that failure to review the claim will result in a miscarriage of justice, i.e., that Petitioner is actually innocent. House v. Bell, 547 U.S. 518, 536–39 (2006); Schlup v. Delo, 513 U.S. 298, 327 (1995). To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. Maples v. Thomas, 565 U.S. 266, 280 (2012); Coleman, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. See Murray v. Carrier, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).

Petitioner attempts to show cause by arguing that trial counsel was ineffective for failing to preserve this claim. See Pet. at 17–18. The ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). Petitioner's claim that trial counsel was ineffective is, however, without merit (see Section IV.C, below), and it therefore may not serve as "cause" for a procedural default. See Aparicio, 269 F.3d at 91–92. Since Petitioner has not established cause, this Court need not decide whether he suffered actual prejudice. See Murray, 477 U.S. at 496.

However, even assuming Petitioner could demonstrate cause, he would be unable to establish that he suffered actual prejudice because his vindictiveness claim is meritless. The fact that Petitioner's aggregate sentence exceeded the last plea offer made prior to trial is not enough to support a conclusion that the sentence imposed was vindictive. See, e.g., Corbitt v. New

Jersey, 439 U.S. 212, 219, 223 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea . . . . We discern no element of retaliation or vindictiveness against [appellant] for going to trial. There is no suggestion that Petitioner was subjected to unwarranted charges. Nor does this record indicate that he was being punished for exercising a constitutional right . . . . There is no doubt that those homicide defendants who are willing to plead non vult may be treated more leniently than those who go to trial, but withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed."); Chaffin v. Stynchcombe, 412 U .S. 17, 31 (1973) (while confronting a defendant with the risk of more severe punishment following trial may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices . . . [is] an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas"); Alabama v. Smith, 490 U.S. 794, 795 (1989) ("We hold that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial."); Brewster v. People of State of N.Y., No. 08-CV-4653, 2010 WL 92884, at *11 (E.D.N.Y. Jan. 6, 2010) ("The fact that the judge did not show leniency to petitioner, who did not admit guilt, does not establish a constitutional violation."); McKeehan v. Zon, No. 05-CV-454, 2009 WL 3429798, at *11 (W.D.N.Y. Oct. 20, 2009) (concluding that "a 12-year difference between the length of the sentence [the petitioner] was offered pursuant to the pre-trial plea offer and the sentence he received after conviction [did not] . . . alone . . . make out a claim of actual vindictiveness"); Lewis v. McGinnis, No. 04-CV-32, 2008 WL 833964, at *24 (N.D.N.Y. Mar. 27, 2008) (Kahn, J.) ("The fact that the court, following conviction, imposed the maximum sentence does not, in itself, demonstrate actual vindictiveness.") (collecting cases); Bailey v.

9

Ercole, No. 06-CV-5811, 2007 WL 4707738, at *13 (S.D.N.Y. Aug. 17, 2007) ("When a sentence imposed at the conclusion of a trial is greater than the sentence a prosecutor had been willing to recommend as part of a plea offer, the disparity does not, without more, establish vindictiveness.").

Furthermore, nothing in the record shows the trial court's sentence was intended to punish Petitioner for proceeding to trial. See Edwards v. Artus, No. 06-CV-5995, 2009 WL 742735, at *6 (E.D.N.Y. Mar. 19, 2009) ("[I]n the absence of proof of actual vindictiveness, the Supreme Court has upheld as perfectly constitutional the disparity between a sentence negotiated as part of a plea and one imposed after trial." (citing Corbitt, 439 U.S. at 218–19)). To the contrary, the record shows that the trial court was presented with evidence of Petitioner's extensive criminal history, which included felony convictions for attempted robbery in the third degree, robbery in the third degree, sale of a controlled substance near school grounds, and first degree unlawful imprisonment, as well as an arrest and conviction for promoting prison contraband, repeated parole violations, and multiple domestic violence incidents. See SR at 242, 244–46, 375, 383–84; S. at 22–24. Petitioner also refused to acknowledge his guilt for the felony crime for which he was convicted. See S. at 34. In other words, as noted by the Third Department, the record shows that the trial court was clearly presented with sufficient evidence to reach the conclusion that Petitioner satisfied the requirements of being designated a persistent felony offender, and extended incarceration and life-time supervision would best serve the public interest. See Rosario, 157 A.D.3d at 991–93.[5]

---

[5] In his Traverse, Petitioner argues that the trial court incorrectly determined at the PFO and sentencing hearing that Petitioner had two prior "violent felony" convictions, and that this "incorrect" determination is evidence of vindictiveness. See Traverse at 14–20. However, as the Third Department noted, it is unclear whether the trial court made such a finding. See Rosario, 157 A.D.3d at 992–93 ("The court's statement that defendant's criminal record included 'two

In addition, Petitioner has failed to present any new evidence that he is "actually innocent" of the crimes for which he was convicted. House, 547 U.S. at 536–39; Schlup, 513 U.S. at 327. Rather, he merely challenges the sufficiency of the evidence at trial in his Traverse. Thus, there is no basis to review the merits of Petitioner's vindictiveness claim under the "miscarriage of justice" exception to the procedural bar. See Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) ("Actual innocence is not in issue here; so cause and prejudice analysis is the only route to the merits."); Calderon v. Thompson, 523 U.S. 538, 559 (1998) ("The miscarriage of justice exception is concerned with actual . . . innocence."); Schlup, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); Calderon v. Perez, No. 10-CV-2562, 2011 WL 293709, at *21 (S.D.N.Y. Jan. 28, 2011) (finding that petitioner fails to meet Schlup burden when he "essentially relies on his legal sufficiency claim" and "fails to provide any new evidence to support his actual innocence claim").

Based on the foregoing, Petitioner's vindictiveness claim is procedurally barred. In addition, to the extent that Petitioner attempts to claim that his sentence was harsh and excessive, that claim is not cognizable because Petitioner's sentence was within the range prescribed by state law. Petitioner was found guilty of first degree unlawful imprisonment, a class E felony,[6]

---

violent felonies' is inaccurate if the court was referring to the statutory definition of a violent felony offense (see Penal Law § 70.02 [1]). However, it appears that the court was not employing a legal term of art, but was using these words colloquially to refer to what it elsewhere stated was a 'thread of violence' running through defendant's history."). In any event, any legal mistake with respect to which of Petitioner's prior convictions constituted "violent felony convictions" is not a basis for finding that the sentence was vindictive.

[6] N.Y. Penal Law § 135.10.

second-degree criminal contempt, a class A misdemeanor,[7] and criminal obstruction of breathing, a class A misdemeanor.[8] As noted, Petitioner was also found to be a persistent felony offender deserving of an enhanced sentence pursuant to N.Y. Penal Law § 70.10.

Because the trial court found that Petitioner was a persistent felony offender, and was presented with sufficient evidence to support an opinion that his history and character, and the nature and circumstances of his criminal conduct, indicated that extended incarceration and life-time supervision would best serve the public interest, the trial court was authorized to impose a sentence of 15-years-to-life for Petitioner's felony conviction. See N.Y. Penal Law §§ 70.10(2), 70.00(1), (2), (3). In addition, the trial court was authorized to impose a sentence of one year of imprisonment for each of Petitioner's misdemeanor convictions. See N.Y. Penal Law § 70.15. Thus, Petitioner's sentence of 15-years-to-life for the unlawful imprisonment conviction, and concurrent one-year terms for the contempt and obstruction of breathing convictions, was within the range prescribed by state law, and therefore not unconstitutional. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("[N]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); see also Mayerhofer v. Bennett, No. 02-CV-74, 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007) (Kahn, J.) (same); Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Accordingly, the Court denies and dismisses Ground Two in its entirety.

---

[7] N.Y. Penal Law § 215.50(1).

[8] N.Y. Penal Law § 121.11.

### B. Ground Three

In Ground Three, Petitioner argues that the first-degree unlawful imprisonment charge was rendered duplicitous by trial testimony which, Petitioner contends, included descriptions of multiple acts of restraint that potentially could have been the basis for the jury's guilty verdict on that count, and therefore "neither the Petitioner, nor the lower court, can be assured that the 'guilty' verdict was based upon a unanimous finding that the Petitioner committed a particular act of 'restraint.'" Pet. at 25; see also id. at 22–25. Petitioner is not entitled to federal habeas relief on this claim.

The Third Department held that Petitioner's duplicity claim regarding the first-degree unlawful imprisonment charge was not preserved for review. Rosario, 157 A.D.3d at 991.[9] As discussed above, New York's "contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." Downs, 657 F.3d at 104 (collecting cases). Moreover, nothing suggests that the Third Department's invocation of the preservation rule was incorrect or untoward in this case, and Petitioner does not argue to the contrary. See Cotto, 331 F.3d at 239–40. Petitioner's claim is therefore defaulted.

---

[9] Petitioner appears to acknowledge, in his appellate brief, that his duplicity argument was not preserved for review. See SR at 36 ("Anticipating a counterargument from the People that the [duplicity] argument was not properly preserved for appeal, . . . it is respectfully submitted that this Court should review the Appellant's duplicity argument as an exercise of discretion in the interests of justice." (citations omitted)). Yet, in his Traverse, Petitioner implies that the Third Department erred in reaching this conclusion. See Traverse at 21–22. However, Petitioner's leave application to the New York Court of Appeals did not contain any such argument. See SR at 508–13. This argument is therefore unexhausted. In any event, for the reasons set forth below, Petitioner's duplicity claim is without merit.

In addition, as discussed above in Section IV.A, Petitioner has not demonstrated that the failure to consider his claims will result in a fundamental miscarriage of justice, nor established cause sufficient to excuse his default. Coleman, 501 U.S. at 750.[10]

Furthermore, Petitioner cannot demonstrate prejudice because his duplicity claim is wholly without merit. "The rule against duplicity prohibits the Government from joining two or more distinct offenses in a single count, because if a jury were to return a general verdict on a duplicitous count, it would be unclear as to whether the defendant was found guilty of only one crime and not the other, or guilty of both." United States v. Coffey, 361 F. Supp. 2d 102, 109 (E.D.N.Y. 2005) (citing United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)); see also United States v. Crisci, 273 F.3d 235, 238 (2d Cir. 2001) ("The vice of a duplicitous charge is that it risks to impair a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution.") (internal quotation marks omitted). An indictment is constitutionally sufficient if "it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." DeYonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994). As a result, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).

Here, as acknowledged by Petitioner, the first-degree unlawful imprisonment charge in the indictment tracked the language of the statute and provided him with the time and place of

---

[10]  As with his vindictiveness claim, Petitioner attempts to show cause by arguing that trial counsel was ineffective for failing to preserve his duplicity claim. See Pet. at 17–18. But, as with his vindictiveness claim, the attempt her fails.

the alleged crime. Pet. at 22; SR at 79. Thus, as the trial court concluded in denying Petitioner's motion to dismiss all ten counts, the indictment was constitutionally sufficient. See SR at 93–94.

Accordingly, Ground Three is denied and dismissed in its entirety.

### C. Ground One

Petitioner argues in Ground One of his Petition that trial counsel was ineffective for failing to do the following: (1) object to the victim's trial testimony that Petitioner choked her in April 2013; (2) make a specific motion for a trial order of dismissal; (3) request a jury instruction on the lesser-included offense of second-degree unlawful imprisonment; (4) object at the PFO and sentencing hearing to the admission of six reports of Petitioner's uncharged prior criminal conduct; (5) object, at that same hearing, to the People's cross-examination of Petitioner directed at his juvenile delinquent and youthful offender adjudications; (6) make a closing argument prior to the PFO determination; (7) make a closing argument prior to sentencing; (8) submit a sentencing memorandum or offer testimony in mitigation of sentence; and (9) preserve the vindictive sentence and duplicity claims for appellate review. Pet. at 16–18; Traverse at 14–35.

Respondent argues that Petitioner's claims are partially procedurally barred and wholly meritless. R. Mem. at 27–35. The Court agrees.

#### 1. *Procedural Bar*

As noted by Respondent, Petitioner's leave application to the New York Court of Appeals argued three specific grounds for alleged trial counsel ineffectiveness: (1) failure to preserve the vindictive sentence claim; (2) failure to preserve the duplicity claim; and (3) failure to request jury charges on lesser-included offenses. See SR at 508–13. The leave application also referred to "various other arguments pertaining to ineffective assistance" raised with the Third Department, but, as Respondent correctly points out, it did not ask for review of those arguments or specify what those arguments were. Id.

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. §§ 2254(b)(1)(A), (B)(i), (ii). To properly exhaust his claims, Petitioner must do so both procedurally and substantively. Procedural exhaustion requires that he raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted). In other words, Petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. Dean v. Smith, 753 F.2d 239, 241 (2d Cir. 1985).

Petitioner's leave application to the New York Court of Appeals did not ask the Court of Appeals to review all claims raised with the Third Department, nor argue that trial counsel was ineffective for failing to do any of the following (which Petitioner now contends demonstrates ineffectiveness): (1) object to the victim's trial testimony that Petitioner choked her in April 2013; (2) make a specific motion for a trial order of dismissal; (3) object at the PFO and sentencing hearing to the admission of six reports of Petitioner's uncharged prior criminal conduct; (4) object, at that same hearing, to the People's cross-examination of Petitioner directed at his juvenile delinquent and youthful offender adjudications; (5) make a closing argument prior

to the PFO determination; (6) make a closing argument prior to sentencing; or (7) submit a sentencing memorandum or offer testimony in mitigation of sentence.

Because appellate counsel argued only three of Petitioner's ineffective assistance claims in detail in the leave application and did not ask the Court of Appeals to review all claims raised with the Third Department, the aforementioned seven ineffective assistance claims, which were presented to the Third Department,[11] were not fairly presented to the New York Court of Appeals. These claims are therefore unexhausted. See Galdamez v. Keane, 394 F.3d 68, 74–75 (2d Cir. 2005) (claims properly exhausted where the "fair import of the total application suggests a request for review of all the issues argued to the Appellate Division.") (internal quotations and citation omitted); Ramirez v. Atty. Gen., Stat of N.Y., 280 F.3d 87, 96, 97 (2d Cir. 2001) (explaining that "the factual basis for an ineffective assistance claim must, like other issues, be presented to all relevant state courts" and "[r]eferences to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal"); Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000) ("Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims."); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (if a petitioner's leave application specifically requested review of only one claim, all other claims would be deemed procedurally defaulted, even though the petitioner included his appellate brief in which the other claims were raised).

There is no remaining avenue by which Petitioner could properly exhaust these unexhausted claims in state court. He cannot now file a direct appeal or leave application in

---

[11] See SR at 54–56.

order to exhaust them because he was "entitled to one (and only one) appeal to the Appellate Division," and one application for leave to appeal to the Court of Appeals. <u>Aparicio</u>, 269 F.3d at 91; <u>Grey</u>, 933 F.2d at 120. If Petitioner filed a C.P.L. § 440.10 motion in an attempt to exhaust his unexhausted claims, the state court would have to deny the motion because the Third Department rejected all of the ineffective assistance claims, including the seven referred to above, on the merits. <u>Rosario</u>, 157 A.D.3d at 993–96; <u>see</u> C.P.L. § 440.10(2)(a) (a state court "must deny" a motion to vacate a judgment when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue"). Since no remaining avenue exists by which Petitioner could properly present his unexhausted ineffective assistance claims, these claims have been procedurally defaulted. <u>Coleman</u>, 501 U.S. at 732; <u>Aparicio</u>, 269 F.3d at 90.

As noted above, procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that the petitioner is actually innocent. <u>House</u>, 547 U.S. at 536–39; <u>Schlup</u>, 513 U.S. at 327; <u>see</u> <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)).

Petitioner does not assert that the denial of habeas relief would result in a fundamental miscarriage of justice or offer any legitimate basis for finding cause to excuse the default of the ineffective assistance claims described above, and the Court discerns none. <u>See</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that petitioner did not satisfy the cause and prejudice showing where he did not give any reason for failing to properly exhaust his federal

claim in state court). Petitioner also does not claim that appellate counsel was ineffective for not fully exhausting each of his ineffective assistance of trial counsel claims, and there is nothing in the record to indicate that Petitioner ever presented that argument to any state court. Such a claim may not, therefore, serve as "cause" to excuse a procedural default. See Carrier, 477 U.S. at 488–89 ("[The] exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal citation omitted). Since Petitioner has failed to establish cause, the Court need not decide whether he will suffer actual prejudice before foreclosing habeas review with respect to the seven ineffective assistance claims not raised in Petitioner's leave application to the New York Court of Appeals. Id. at 496; Stepney, 760 F.2d at 45.

### 2. Merits

Even if each of Petitioner's ineffective assistance claims were wholly exhausted, habeas relief would be unavailable because his trial counsel was not constitutionally ineffective.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different such that the petitioner suffered prejudice. Premo, 562 U.S. at 121–22 (noting that petitioner "must show both deficient performance by counsel and prejudice") (citation and internal quotation marks omitted); Strickland v. Washington, 466 U.S. 668, 694 (1984). The standard "must be applied with scrupulous care" in habeas proceedings because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" Premo, 562 U.S. at 122. "Strickland does not guarantee perfect representation, only a reasonably competent attorney." Richter, 562 U.S. at 110 (quoting Strickland, 466 U.S. at 687) (internal quotation marks and further citation omitted). To establish a deficient performance

by counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Demonstrating constitutionally ineffective assistance of counsel is "never an easy task . . . [and] establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Premo, 562 U.S. at 122 (citations and internal quotation marks omitted); Burt v. Titlow, 571 U.S. 12, 19 (2013) (noting that "AEDPA erects a formidable barrier" to federal habeas review of claims that have been adjudicated in state court). When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." Richter, 562 U.S. at 105. Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Here, trial counsel provided Petitioner with an effective overall defense. Counsel made an omnibus pretrial motion in which he sought dismissal of the indictment and preclusion of certain evidence. SR at 86–90. At trial, counsel conducted vigorous cross-examination of the People's witnesses, made several objections to testimony offered by the People, and moved for a trial order of dismissal at the close of the People's case and at the conclusion of evidence. See, e.g., T.

at 243–44, 283–312, 326, 334, 343, 373, 391–92, 421–24, 473, 537. Trial counsel also pursued a theory that the victim and jailhouse informant were not credible, which seemingly contributed to Petitioner's acquittal on six of the nine counts that were presented to the jury, including five of the six felony counts. As the Supreme Court has noted, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy," as it does here. Richter, 562 U.S. at 111.

Thus, whether Petitioner's ineffective assistance claims are considered individually or in combination, Petitioner has failed to establish trial counsel's representation was deficient or that he was prejudiced. As a result, the state court's rejection of Petitioner's ineffective assistance claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor did it constitute an unreasonable determination of the facts in light of the evidence presented. Accordingly, and for the reasons discussed more fully below, Petitioner's ineffective assistance claims are denied.

### a. Counsel's Failure to Object to Victim Testimony

Petitioner contends that trial counsel was ineffective for allowing the victim to testify on direct examination about an incident that occurred in April 2013, during which Petitioner "yelled and screamed at her, choked her for thirty (30) seconds, . . . [and] dumped garbage all over the kitchen[.]" Pet. at 16. According to Petitioner, this testimony was improper because it "was not the subject of any Molineux/Ventimiglia proffer and was not included within the trial court's Molineux/Ventimiglia ruling." Id.[12]

---

[12] People v. Molineux, 168 N.Y. 264 (1901); People v. Ventimiglia, 52 N.Y.2d 350 (1981). These decisions concern the admissibility at trial of evidence of prior, uncharged bad acts.

The Third Department rejected this argument and found that "the victim's testimony regarding an incident in which [Petitioner] choked her did not constitute impermissible Molineux evidence [but] rather . . . was proof of the count in the indictment charging criminal obstruction of breathing." Rosario, 157 A.D.3d at 993–94; see also SR at 82.

Because the testimony related to a charged crime,[13] counsel had no basis to object. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) (noting that the failure to make a meritless objection or "argument does not amount to ineffective assistance"); see also Aparicio, 269 F.3d at 99 (finding the failure to raise a meritless claim "does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled"). Thus, the Third Department's conclusion that trial counsel was not ineffective for failing to object to the victim's testimony regarding the April 2013 incident was not objectively unreasonable. The Court therefore denies and dismisses Petitioner's ineffective assistance claim on this basis.

### b. Counsel's Failure to Make Specific Motion for Order of Dismissal

Petitioner contends that trial counsel was ineffective for failing to make a "sufficiently specific motion for a trial order of dismissal . . . upon the close of the People's direct case, and upon the conclusion of all proof." Pet. at 16. The Third Department rejected this argument, finding that Petitioner "suffered no harm" based on trial counsel's failure to make specific motions for a trial order of dismissal because "the People established all of the elements of the crime now at issue, [and therefore] . . . the motion would not have been successful." Rosario, 157

---

[13] In his Traverse, Petitioner incorrectly contends that the victim's testimony related to an event that occurred in August 2013. See Traverse at 33. In actuality, the victim testified about an event that occurred in approximately the middle of April 2013, during which Petitioner choked her, and the indictment charged Petitioner with obstruction of breathing based on an event that occurred "on or about the middle of April, 2013." See T. at 247–48; SR at 82.

A.D.3d at 994.[14] Before reaching this conclusion, the Third Department summarized the victim's

trial testimony as follows:

> The victim testified that she was in the bathroom of her apartment when
> [Petitioner] suddenly appeared. She testified that she walked toward the
> apartment door to leave, but [Petitioner] pulled a revolver from his pocket,
> pointed it at her and told her to sit down and that he was not joking. She further
> testified that, at different points during the night, [Petitioner] struck her and
> ordered her to go upstairs, go back downstairs and to perform certain sexual
> acts, and she complied because he had a gun. At one point, [Petitioner] asked if
> she wanted to play Russian Roulette. According to the victim, she did not
> attempt to leave the apartment again because she felt that she could not get
> away, and she was afraid that [Petitioner] would hurt her or himself if she tried
> to escape. The victim was physically much smaller than [Petitioner], who
> testified that he worked out. In contrast to the victim's version of events,
> [Petitioner] testified that the victim invited him to her apartment and they
> engaged in consensual sexual acts; he denied having a gun or forcing her to do
> anything. Neither a gun nor bullets were located after [Petitioner] was arrested.

Rosario, 157 A.D.3d at 990.

Petitioner was convicted of first-degree unlawful imprisonment, second-degree criminal

contempt, and criminal obstruction of breathing. Dkt. No. 15-4 at 4; T. at 641–44. "A person is

guilty of unlawful imprisonment in the first degree when he [or she] restrains another person

under circumstances which expose the latter to a risk of serious physical injury[.]" N.Y. Penal

Law § 135.10. In this context, to "restrain" "means to restrict a person's movements intentionally

and unlawfully in such manner as to interfere substantially with his liberty by moving him from

one place to another, or by confining him either in the place where the restriction commences or

in a place to which he has been moved, without consent and with knowledge that the restriction

is unlawful." N.Y. Penal Law § 135.00 [1]. "A person is so moved or confined 'without consent'

when such is accomplished by (a) physical force, intimidation or deception, or (b) any means

---

[14] Trial counsel did make a general motion to dismiss each count of the indictment at the close of the People's proof and again at the close of the evidence. See T. at 473, 537–38.

whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement." Id.

Based on the victim's trial testimony, the Court agrees with the Third Department's finding that the jury had a clear basis to infer that the victim was restrained on the date giving rise to the charge of first-degree unlawful imprisonment, under circumstances that exposed her to a risk of serious physical injury. See Rosario, 157 A.D.3d at 990–91. Thus, viewed through the "doubly" deferential standard applicable to ineffective assistance claims on habeas review, the Court cannot conclude that the Third Department's rejection of Petitioner's claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that it was an unreasonable determination of the facts in light of the evidence presented. Richter, 562 U.S. at 105; accord Knowles, 556 U.S. at 123; see also Sides v. Senkowski, 281 F. Supp. 2d 649, 658 (W.D.N.Y. 2003) (noting that where a motion is unlikely to succeed, "defense counsel's failure to make the motion does not constitute ineffective assistance because no prejudice inures to the petitioner in such a case"). The Court therefore denies and dismisses Petitioner's ineffective assistance claim on this basis.

### c.  Counsel's Failure to Request Lesser-Included Offense Charge

Petitioner contends that trial counsel was ineffective for failing to "request that the trial court instruct the jury on the lesser included offense of unlawful imprisonment in the second degree." Pet. at 16. The Third Department rejected this argument, finding that Petitioner failed to demonstrate "that the failure to request [such a] charge was other than an acceptable 'all-or-nothing' defense strategy[.]" Rosario, 157 A.D.3d at 994 (citations omitted).

"[C]ourts in the Second Circuit have held that it is a strategic decision not to seek submission of a lesser-included offense, especially where the defense counsel's strategy is to

deny guilt and seek an acquittal." Martinez v. Colvin, No. 17-CV-757, 2018 WL 7047148, at *11 (S.D.N.Y. Nov. 6, 2018) (collecting cases). "The law recognizes a presumption that counsel makes reasonable strategic decisions." Id. "Indeed, courts afford substantial deference to a counsel's tactical decision that he would not request a lesser included offense charge." Hernandez v. Larkin, No. 12-CV-8090, 2013 WL 4453316, at *15 (S.D.N.Y. Aug. 19, 2013) (internal citation and quotation marks omitted) (holding that counsel was not ineffective for failing to request a charge for a lesser-included offense "especially in light of the presumption that counsel makes reasonable strategic decisions").

Here, the Court agrees with the Third Department that trial counsel's decision not to seek submission of the lesser-included offense to unlawful imprisonment in the first degree was likely a strategic decision because it appears—based on this Court's review of the trial transcripts—that counsel sought an acquittal for Petitioner based on a theory that the victim's version of events, and the testimony of the jailhouse informant, were not credible. Counsel's summation focused on why the jury should find Petitioner not guilty of the crimes charged,[15] and thus, "requesting submission of a lesser-included offense would have undermined the entire defense." Martinez, 2018 WL 7047148, at *12.

Moreover, this strategy proved to be generally effective, as Petitioner was acquitted on six of the nine charges in the indictment, including five of the six felony charges. Thus, the Court cannot conclude that the Third Department's rejection of Petitioner's claim that trial counsel was ineffective for failing to seek lesser-included offense charges was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that it was an unreasonable determination of the facts in light of the evidence presented. Richter, 562 U.S. at 105; accord

---

[15] See SR at 546–58.

Knowles, 556 U.S. at 123. The Court therefore denies and dismisses Petitioner's ineffective assistance claim on this basis.

### d. Counsel's Failure to Make Objections at Post-Trial Hearing

Petitioner contends that trial counsel was ineffective for not objecting to the admission of six reports of Petitioner's uncharged prior criminal conduct or the People's cross-examination of Petitioner directed at his juvenile delinquent and youthful offender adjudications. Pet. at 17. The Third Department rejected the first argument because: (1) pursuant to C.P.L. 400.20(5), the People may introduce any relevant evidence, regardless of admissibility under the evidentiary rules, "pertaining to the [Petitioner]'s history and character and the nature and circumstances of his criminal conduct;" and (2) five of the six incident reports "were relevant to [the trial court's] consideration of [Petitioner's] history and character." Rosario, 157 A.D.3d at 994. In addition, the Third Department rejected the second argument because trial counsel "had objected to the consideration of [the juvenile] adjudications in a letter submitted prior to the hearing." Id. at 995. The Third Department also found that Petitioner was not prejudiced by the introduction of the juvenile adjudications because the trial court "explicitly stated that it did not consider those adjudications[.]" Id.

As noted, where a motion is unlikely to succeed, "defense counsel's failure to make the motion does not constitute ineffective assistance because no prejudice inures to the petitioner in such a case." Sides, 281 F. Supp. 2d at 658.

Petitioner has not identified a basis for excluding the incident reports, and the Court can conceive of none in light of the lenient standard for admissibility of evidence set forth in C.P.L. 400.20(5). Moreover, prior to the PFO and sentencing hearing, trial counsel submitted a letter responding to the six incidents identified in the People's pre-sentence investigation. See SR at 443–45. During the hearing, trial counsel also argued, in response to the introduction of the six

incident reports, that none of the conduct described therein resulted in Petitioner's arrest or prosecution and called Petitioner as a witness to address each of the six reports. S. at 8, 15–18.

Similarly, trial counsel requested, prior to the hearing, that the trial court not consider Petitioner's juvenile adjudications and, indeed, the trial court "completely disregard[ed]" them in arriving at its decision to impose a PFO sentence. See SR at 383; S. at 31.

Thus, the Court cannot conclude that the Third Department's rejection of Petitioner's claim that trial counsel was ineffective for failing to object to the introduction of six incident reports or Petitioner's juvenile adjudications during the PFO hearing was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that it was an unreasonable determination of the facts in light of the evidence presented. Richter, 562 U.S. at 105; accord Knowles, 556 U.S. at 123.

### e. Counsel's Failure to Make Closing Arguments

Petitioner contends that trial counsel was ineffective for failing to make closing arguments both prior to the trial court's PFO determination and prior to the trial court's sentencing decision. Pet. at 17. The Third Department rejected these claims because: (1) "[w]hile counsel did not make a summation at the end of the hearing, at other points in the hearing he made statements and arguments in which he requested that the court not sentence [Petitioner] as a persistent felony offender[;]" (2) "the lack of a formal summation [outside the presence of a jury] did not deprive [Petitioner] of meaningful representation[;]" and (3) "[b]efore sentencing was imposed, counsel noted [Petitioner's] difficult past and that [Petitioner] has always taken responsibility for his actions [and] . . . asked [the] County Court to exercise its discretion to impose a sentence of time served even if [Petitioner] was deemed a persistent felony offender." Rosario, 157 A.D.3d at 995.

Trial counsel presented arguments both prior to and during the post-trial hearing and called Petitioner to testify during the hearing as to why Petitioner should not be sentenced as a persistent felony offender and should receive a sentence of time served regardless of his classification. See SR at 443–47; S. at 7–8, 12, 15–18, 31–39. In addition, as the Third Department noted, trial counsel also asked the trial court to impose a sentence of time served even if Petitioner was deemed a persistent felony offender. The fact that trial counsel did not present a more formal summation during the PFO or sentencing portions of the post-trial hearing did not render his representation objectively unreasonable. Furthermore, there is no basis for finding that the lack of a formal summation prejudiced Petitioner in any way.

Thus, the Court cannot conclude that the Third Department's rejection of Petitioner's claim that trial counsel was ineffective for failing to make closing arguments during the post-trial hearing was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that it was an unreasonable determination of the facts in light of the evidence presented. Richter, 562 U.S. at 105; accord Knowles, 556 U.S. at 123.

### f. Counsel's Failure to Submit a Memorandum or Offer Testimony in Mitigation of Sentence

Petitioner contends that trial counsel was ineffective for failing to "prepare and submit a sentencing memorandum, or offer the testimony of any witness to refute the People's proof regarding the Petitioner's history and character." Pet. at 17. The Third Department rejected these claims because: (1) Petitioner was called as a witness at the post-trial hearing; (2) Petitioner did "not demonstrate[] that any other witnesses were available and willing to testify to his history and character in a helpful way[;]" and (3) "[c]ounsel was not required to prepare a written sentencing memorandum, considering that he submitted two letters addressing alleged

misstatements in the PSI and he made oral statements at sentencing." <u>Rosario</u>, 157 A.D.3d at 995.

As noted, trial counsel submitted two letters addressing the People's pre-sentence report prior to the post-trial hearing. As also noted, trial counsel presented arguments during the hearing, and had Petitioner testify as to why Petitioner should not be sentenced as a PFO and should only receive a sentence of time served. <u>See</u> SR at 443–47; S. at 7–8, 12, 15–18, 31–39. Moreover, Petitioner did not demonstrate on appeal that any witnesses were available and willing to testify on his behalf about his history and character.

Under such circumstances, trial counsel's failure to prepare a formal sentencing memorandum in advance of the post-trial hearing, or offer witness testimony other than Petitioner to refute the People's proof regarding Petitioner's history and character, did not render counsel's representation objectively unreasonable. Moreover, there is no basis for finding that any of trial counsel's actions or inactions related to the post-trial hearing prejudiced Petitioner in any way.

### g.  Counsel's Failure to Preserve Vindictive Sentence and Duplicity Claims for Appellate Review

Petitioner contends that trial counsel was ineffective for failing to preserve his vindictive sentence and duplicity claims for appellate review. Pet. at 17–18. For the reasons discussed above, Petitioner's vindictive sentence and duplicity claims are meritless. Thus, trial counsel's failure to preserve these claims cannot constitute constitutionally ineffective representation. <u>See</u> <u>Arena</u>, 180 F.3d at 396 ("Failure to make a meritless argument does not amount to ineffective assistance.") (internal quotations and citation omitted); <u>Clark v. Capra</u>, No. 14-CV-2507, 2017 WL 4685104, at *3 (S.D.N.Y. Oct. 17, 2017) ("[C]ounsel cannot be deemed ineffective for failing to preserve [a] meritless . . . claim.").

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED AND DISMISSED in its**

**entirety**; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner

has failed to make a "substantial showing of the denial of a constitutional right" as

28 U.S.C. § 2253(c)(2) requires;[16] and it is further

**ORDERED**, that the Clerk shall serve a copy of this Decision and Order on the parties in

accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        January 22, 2020
                     Albany, New York


_____
Lawrence E. Kahn
Senior U.S. District Judge

---

[16] <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (holding that "§ 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'"); <u>see</u> <u>Richardson v. Greene</u>, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).